ADVANCE-RUMLEY COMPANY *v.* FREESTONE ET AL.

[No. 13,277. Filed July 2, 1929. Rehearing denied but award modified September 13, 1929.]

· *John E. Winn, Andrew J. Hickey, Norman F. Wolfe* and *John B. Dilsworth,* for appellant.
*H. W. Worden,* for appellees.

McMahan, C. J.—Alonzo Freestone died October 3, 1927, as the result of an accident which arose out of and in the course of his employment by appellant. He left surviving him two sons, Amos, born in December, 1914, and Ernest, born in June, 1916. These sons, by their guardian, filed an application for compensation. Amos was awarded 300 weeks compensation at the rate of $12.07, per week, and Ernest was awarded compensation for the same period at the rate of sixty-one cents per week. The employer appealed. In December, 1916, Mary Freestone, the mother of these boys, was divorced from Alonzo Freestone by the LaPorte Circuit Court, and was awarded the custody, education and maintenance of Ernest. The father was ordered to pay $5 per month for his support. The father was given the care and custody of Amos until further order of the court. Mrs. Freestone married again, and, at the time of Alonzo Freestone's death, she and Ernest lived with her second husband on a farm in Michigan. Amos lived with his father until June 23, 1927, when the LaPorte Circuit Court committed him to White's Manual Labor Institute at Wabash, as a delinquent. Amos was there-

after under the care and custody of that institution until after the father's death. LaPorte county was charged with and paid for the care and support of Amos after he was sent to said institution. After the death of the father, the probation officer of LaPorte county, with the consent of the judge, gave a letter to an uncle of Amos, for his release, in order that he might attend the funeral. The uncle, acting on this letter, got the boy at the time of the funeral, and, on December 1, 1927, he was with the uncle. The order of the court committing Amos to the institution as a delinquent has never been revoked or modified, but is still in force.

Appellant contends that neither of the boys is entitled to compensation. Section 38 of the Workmen's Compensation Act, as amended in 1919, Acts 1919 p. 158, §9483 Burns 1926, provides: "The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee: . . . (c) A child under the age of eighteen years upon the parent with whom he or she is living at the time of the death of such parent. (d) A child under eighteen years upon a parent with whom he or she may not be living at the time of the death of such parent, but, upon whom, at such time, the laws of the state impose the obligation to support such child. . . . In all other cases, questions of total dependency shall be determined in accordance with the fact, as the fact may be at the time of the death, and the question of partial dependency shall be determined in like manner as of the date of the injury. If there is more than one person wholly dependent, the death benefit shall be divided equally among them, and persons partially dependent shall receive not [no] part thereof.

"If there is no one wholly dependent and more than one person partially dependent, the death benefit shall

be divided among the partial dependents according to the relative extent of their dependency."

The Industrial Board did not find as a fact that either of the boys was or was not living with the father at the time of his death. It found that the custody, education and maintenance of Ernest was by the decree of divorce given to the mother, and that the father should pay her $5 a month for his support, that the father was given the care and custody of Amos, that the decree had never been changed, and that the boys were the only dependents of the father at the time of his death. Neither the finding nor the award mentions any fact relating to the commitment of Amos to the care and custody of an institution, where, at the time of the father's death, he was being supported by the county. The undisputed evidence shows that Ernest had been living with his mother after the divorce, and that Amos lived with his father until he was committed to the institution, where he remained until after his father's death.

The board awarded each child compensation, one at the rate of sixty-one cents per week, and the other at the rate of $12.07 per week. The only reasonable inference to be drawn from this award is that the board did not find that either child was living with the father at the time of his death. If both had been living with the father at the time of his death, each, under the law, would have been conclusively presumed wholly dependent, and the compensation would, under the law, have been divided equally between them. If neither of them had been living with the father, but if, under the facts, the law imposed upon the father the obligation of supporting both of them, each of them, under the law, would have been wholly dependent, and the compensation should have been divided equally between them. If the board had found that Amos was living with his father, and that Ernest was living with and being par-

tially supported by his mother, Amos would have been conclusively presumed to be wholly dependent, and entitled to the whole of the compensation awarded. If, on the other hand, neither was living with the father at the time of his death, but both were, under the law, entitled to be partially supported by the father, the amount of the compensation, under the law, should have been divided between them, "according to the relative extent of their dependency." Since the board divided the compensation between them in unequal parts, the inference is that the board acted upon the theory that each was partially dependent, and that neither was totally dependent.

Appellant contends that if the children were not living with the father, he was not under a legal duty to support either of them. We will first consider this contention as it applies to Amos. Did the laws of this state impose an obligation on the father to support him while he was in the care and custody of an institution under a commitment issued by a court of general jurisdiction, when there was no order or judgment requiring the father to pay any part of the cost of his care, and when the county was liable for and was paying the whole cost of his support in such institution?

The circuit court of LaPorte county is a court of general jurisdiction and has exclusive jurisdiction in all matters relating to children, including juvenile delinquents and in all cases wherein the custody and legal punishment of delinquents are in question. §1705 Burns 1926, Acts 1913 p. 852. Section 2 of this act provides, among other things that, whenever a complaint is pending against a boy, before he has completed his sixteenth year, for the commission of any offense not punishable with life imprisonment or death, the matter shall be referred to a probation officer for

investigation and report. If, after consultation with the probation officer, the cause is not dismissed, "a summons shall be issued by the clerk requiring the person or persons having custody or control of the child or with whom it may be, to appear with the child at a place and time which shall be stated in the summons; said summons shall also contain a notice requiring such person or persons to show cause, if any, why such child shall not be made a public ward or a ward of the court." If such person is not the parent or guardian of the child, the parent or guardian shall be notified of the pendency of the cause. If, upon the trial, it shall appear that the child is guilty of the offense charged, the court may, among other things, order that such child be placed in the home where the county's dependent children are kept or it may be committed to some institution devoted to the care of such children, for a *definite or indefinite period, where it shall be kept at the per diem fixed by law and to be paid by the county.* In every case where the court commits a child to the care and custody of any institution other than a state institution, the court *may* make an order requiring the parent or guardian to show cause why he should not pay, in whole or in part, for the support of such child while it is in such institution, and the court *may* render judgment requiring the parent or guardian to pay such amount as is found just. If the health of the child requires it, the court may place such child in a public or private hospital or institution for treatment or special care.

Did the act of the court in committing Amos to the institution, without an order or judgment requiring the father to pay any part of the cost of his care and support in such institution, relieve the father from his legal obligation, or was the obligation to support such child while in such institution imposed by the laws of the state in the absence of such an order or judgment?

At common law, the king, as *parens patriae*, had the supreme guardianship of all infants within the realm, and the duty of protecting them from wrong; and it is the modern equivalent of this doctrine that the parent's right is always subject to the control of the state and its courts, 20 R. C. L. 597; *Jones* v. *Darnall* (1885), 103 Ind. 569, 2 N. E. 229, 53 Am. Rep. 545. The supremacy of the state over the rights and guardianship of the parents is best illustrated by cases like the one now under consideration, where the child is taken from the parent by administrative proceedings instituted by the state and committed to some institution.

"The obligation to support and educate a child, and the right to the custody and services of such child, are reciprocal obligations and rights, unless otherwise fixed by judicial decree." *Leibold* v. *Leibold* (1902), 158 Ind. 60, 62 N. E. 627. In *Ramsey* v. *Ramsey* (1889), 121 Ind. 215, 23 N. E. 69, 6 L. R. A. 682, a divorced wife sought to compel her former husband to support a child born to her after the divorce, and where no reference to the unborn child was made in the decree. In discussing the subject, the court said: "It is therefore the settled rule of law in England, as well as in this country, that, however derelict a father may have been in the discharge of his parental duty, he is under no legal obligation, in the absence of statutory enactment, to remunerate one who may have furnished necessaries, or afforded relief to his minor child, unless either an express promise to pay, or circumstances from which such a promise may be implied can be shown." On page 221, the court said: "The right to the custody and services of the child, and the obligation to support and educate, are reciprocal rights and obligations, *unless otherwise fixed by judicial decree.*" (Our italics.) To the same effect, see *Husband* v. *Husband* (1879), 67 Ind. 583, 33 Am. Rep. 107; *Foss* v. *Hartwell* (1897), 168 Mass. 66,

37 L. R. A. 589, 60 Am. St. 366; *Wheeler* v. *State* (1912), 51 Ind. App. 622, 100 N. E. 25; Simpson, Law of Infants (2nd ed.) 171; Tyler, Infancy and Coverture (2nd ed.) §§181, 185, 190.

This court has also spoken on this subject. The most recent case is *Western Indiana Gravel Co.* v. *Erwin, Gdn.* (1925), 84 Ind. App. 26, 149 N. E. 185, a compensation case, where the court quoted extensively from *Husband* v. *Husband, supra,* and held that children whose custody was awarded to the mother on divorce of the parents, and who lived with and were supported by the mother, without an order of court requiring the father to support them, were not dependents within the meaning of sub-division (d) of §9483, *supra,* so as to be entitled to compensation on the father's injury and death. And in *Stephens* v. *Stephens* (1921), 76 Ind. App. 687, 132 N. E. 747, where the parents of the child were divorced, the mother having been given the custody of the child and a small judgment for alimony and for its support, the child was held not a dependent under the Workmen's Compensation Act. See, also, *Kramer* v. *Tone Bros.* (1924), 198 Iowa 1140, 199 N. W. 985.

Under the Workmen's Compensation Act as originally enacted, Acts 1915 p. 392, §38, the fact that Amos was not living with his father at the time of the latter's death would, in itself, have excluded him from the class of children conclusively presumed to be wholly dependant for support upon his father. The amendment under which he claims compensation, Acts 1919 p. 158, extends the presumption to certain children not living with the parent at the time of his death, but only to those "upon whom, at such time, the laws of the state impose the obligation to support." It is not to be assumed that the Legislature, in using the quoted words, was creating a new and enlarged obligation on the part of the father to support his children, but was merely referring to and

embodying therein the existing law of this state, under which the obligation is largely dependent upon the right to custody. We cannot enlarge the scope of this amendment by reading into it language which would materially change the existing law, and extend the legal obligation of a father to support to a case like the present, where the custody of the child had been taken from the father and transferred to a custodial institution, without a decree of the court requiring him to pay anything towards its support. See Miller's Case (1923), 244 Mass. 281, 138 N. E. 254. As was said in *Creeley* v. *Creeley* (1927), 258 Mass. 460, 155 N. E. 424, 52 A. L. R. 285: "At common law a father is entitled to the custody of his minor children and, if of sufficient ability, is bound to support them. . . . Accompanying this obligation to support is the right on the part of the father to the custody, society and services of the child. . . . If the father is deprived of the custody of his child by order of court, it is held in this Commonwealth that the common-law duty to support ceases and, apart from statute, his obligation in this respect is then to be determined by judicial decree."

"The right to recover compensation is the creature of the workmen's compensation act." *Gillander's Case* (1922), 243 Mass. 5, 136 N. E. 646. And where, as in the instant case, the child is not living with the parent, it requires the establishment of the legal obligation to support.

An insane wife of a workman, confined in an asylum and cared for at public expense is not a dependent entitled to compensation for his death under the Workmen's Compensation Act. *Roberts* v. *Whaley* (1916), 192 Mich. 133, 158 N. W. 209, L. R. A. 1918A 189.

In *Rees* v. *Penrikyber Navigation, etc., Co.* (1902), 1 K. B. (Eng.), 259, a pauper inmate of a workhouse, toward whose maintenance no contribution was in fact made by his

son, was held not to be as a matter of law in part dependent on the son's earnings, within the meaning of the Workmen's Compensation Act, notwithstanding the son's indirect obligation under the poor law to contribute to his father's maintenance.

A widow, whose only son was killed in an accident, was not entitled to compensation when a goodly portion of the time she had been in prison, and where, at the time of his death, she was in an inebriate reformatory. *Trainer* v. *Robert Addie and Sons', Collieries, Ltd.* (1904), 42 Scot. L. R. 85.

Appellee calls attention to *Vigo Am. Clay Co.* v. *Kelley, Gdn.* (1925), 82 Ind. App. 675, 147 N. E. 301, and contends that, under the rule there announced, Alonzo Freestone, at the time of his death was, under the laws of this state, obligated to support the son Amos. In the case cited, the father was a widower, his wife having predeceased him, leaving surviving her her husband and a child then only a few days old. After the death of the mother, the child was taken to the home of another, where she thereafter lived. The father had never, in any way, been relieved of his legal duty to support the child. That case was correctly decided, and an award of compensation in favor of the child sustained, but it is of no controlling influence in the instant case.

If the court had modified the decree of divorce in so far as it related to the custody of Amos, and had placed him in the care and custody of his mother, without requiring the father to pay anything toward his support, instead of placing him in an institution, it is clear, under the authorities, that Amos would not, while in the custody of his mother, under such decree, have been dependent within the meaning of the Workmen's Compensation Law. Why? Because the father, having been deprived of the custody of his child and of the right to his control and to his earnings, would

not, under the laws of this state, in the absence of a decree of the court, have been obligated to pay for his support. So, in the instant case, the father having been deprived of the custody of Amos without a judicial decree requiring him to contribute to his support, the laws of this state did not impose an obligation on the father to support such child. It was not necessary for the court to state in the decree depriving the father of the custody of his child and committing him to an institution that the father was relieved of his prior legal obligation to support such child. The legal effect of the decree depriving him of the custody of his child was to relieve him of his legal duty to support such child so long as the decree of the court remained in force. If the court had, by a decree, ordered the father to pay the whole of the cost of supporting the child while in the institution, the law would have imposed upon him the obligation to support such child. If such an order had been made, Amos would, under subdivision (d) §9483 *supra*, have been conclusively presumed to have been wholly dependent upon his father for support and would have been entitled to the whole of the death benefit to the exclusion of his brother, Ernest, who was only a partial dependent. Any other holding would be inconsistent with the previous decisions of this court as well as of the Supreme Court.

If Amos Freestone was a proper subject to be placed in an institution at the expense of the county, without any order being made that the father should pay any part of the cost of his support, and we must presume he was, the county was liable for his support while there, and no person was liable to the county for his support while in such institution. If the father was able to pay for his support, in whole or in part, the court should have made an order to that effect. The failure of the court to make such an order is a judicial determination that the father was not required to pay any part of such sup-

port. It was in effect an act of charity which the public was bound to bestow, and no authority is by law given to the county to sue for the cost of such support. See *Board, etc.,* v. *Hildebrand* (1849), 1 Ind. 555; *Board, etc.,* v. *Schmode* (1875), 51 Ind. 416.

*Spade* v. *State* (1909), 44 Ind. App. 529, 89 N. E. 604, is not in point. There, the parents of a child, less than three years of age, had been divorced in November, 1908, the custody of the child given the mother, and the father ordered to pay her $1.25 a week for the child's support. The father paid $12, and no more. The mother, with the knowledge of the father, abandoned the child and became an inmate in a house of prostitution. On March 9, 1909, the child was adjudged a dependent and neglected child and made a ward of the board of county commissioners. The father, knowing the mother had abandoned the child, had failed and neglected to look after it, which he, under the divorce decree, was at least required to partially support, and had failed for two months to pay the $1.25 a week for its support. Two days after the child was made a public ward, the father was arrested on a charge of having contributed to the dependency and neglect of the child. The record in that case discloses that the mother had left the child in the possession of an elderly couple, who were unfit to care for it, and where it was kept in filth and squalor; that the father knew the facts and, at the time the child was made a public ward, he had not only failed to see that the child was kept in a decent place, but had also failed to make the weekly payments for its support. He was properly found guilty, not because he had neglected the child after it had been made a public ward, but because of his neglect prior to that time, and the statute under which he was prosecuted expressly gave the court power to suspend judgment on condition that the defendant should provide and care for the child in such manner as the court

should direct. §1701 Burns 1926, Acts 1907 p. 59, §4. As a matter of fact, the appellant, in that case, did not attack the authority of the court to suspend judgment on the named conditions.

In *Wheeler* v. *State* (1912), 51 Ind. App. 622, 100 N. E. 25, a father had been convicted of failing to support his minor children. On appeal, the conviction was reversed, the court saying: "It is unquestionably the duty of a father to support his minor children, but in return for this he is entitled to their services and companionship."

*Guthrie County* v. *Conrad* (1907), 133 Iowa 171, 110 N. W. 454, was an action by the county against the father of a minor son to recover the cost of the son's care in a hospital for the insane. It was said by the court that it was conceded there was no liability unless a certain section of the statute relating to the commitment to the hospital created a liability. The statute there involved expressly provided that the statute should not be construed to release the estates of persons committed "nor their relations from liability for their support," and authorized the auditor, on behalf of the county, to make the collection from any person liable for their support. The court held that the statute unmistakenly fixed the liability of persons legally bound for the support of such persons and authorized a recovery.

The award as to Amos must be and the same is reversed. The award in favor of Ernest is affirmed.

Lockyear and Nichols, JJ., dissent.

### DISSENTING OPINION.

LOCKYEAR J.—I cannot concur in the majority opinion and dissent for the following reasons:

It is admitted that Amos Freestone was committed to White's Manual Training Institute on June 23, 1927, and remained there until the death of his father and that

White's Manual Training Institute is not a state institution.

Section 1705 Burns 1926 (Acts 1913 p. 854) provides that: "The court may make and enter an order requiring such parent or guardian to appear before said court upon a day and hour to be named therein and *show cause, if any he or she have, why he or she should not pay for the support of such child*, in whole or in part, while it is an inmate of such institution." (Our italics.)

There is no showing that this was ever done. No order of any court relieving the father of Amos Freestone from his legal duty to support his children ever had been made, and if he was not relieved by law from his duty to support his child, he was still under a legal obligation to support his child at the time of his death. When a child is to be sent to an institution *other than a state institution*, unless the father is called before the court and excused from the obligation imposed upon the father by law, the obligation remains upon him to support his child while in the institution. In this case, the father was not relieved by law, but was compelled by the law to support his child.

Section 2867 Burns 1926 (Acts 1913 p. 956) provides: "The father, or, when charged by law with the maintenance thereof, the mother, of a child or children, under fourteen years of age, living in this state, who, being able, either by reason of having means or by personal services, labor or earnings, shall wilfully neglect or refuse to provide such child or children with necessary and proper home, care, food and clothing, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the state prison or reformatory for not more than seven years nor less than one year."

Legal obligation is imposed upon a father to support his child both by the statute and by the weight of authority. That obligation is imposed at the birth of the

child and is not shifted until it is removed in some way by a legal proceeding. *Vigo Am. Clay Co.* v. *Kelly, Gdn.* (1925), 82 Ind. App. 675, 147 N. E. 301; *Spade* v. *State* (1909), 44 Ind. App. 529, 89 N. E. 604; *Leibold* v. *Leibold* (1902), 158 Ind. 60, 62 N. E. 627; *State* v. *Yocum* (1914), 182 Ind. 478, 106 N. E. 705; *Hummel* v. *State* (1920), 73 Ind. App. 12, 126 N. E. 444.

The duty of parents to their children embraces their maintenance, protection and education. This is said to rest upon a principle of natural law; but perhaps it may be more reasonably referred to as the implied obligation which parents assume in entering into wedlock, and by bringing children into the world. By so doing, they have entered into a voluntary, though implied obligation, to maintain, protect and educate their children, especially during the tender age of infancy, according to the best of the parents' ability. *Cromwell* v. *Benjamin* (1863), 41 Barb. (N. Y.) 558; *Litchfield* v. *Londonderry* (1859), 39 N. H. 247; 1 Honnold, Workmen's Compensation §76. "As a general rule it does not prevent members of a workman's family from being dependent on him for support that at the time of his death he was unable or refused to support them, or had deserted them, especially where there was a reasonable expectation that he would return."

1 Honnold, Workmen's Compensation §§82, 266, Parent and Child: "Where there is a direct legal obligation to support, as in the case of a father to his minor children, coupled with the reasonable probability of such obligation being fulfilled, dependency is established, even though no support was in fact being furnished at the time of the workman's death. The law does not limit dependency of minor children living apart from their parents to cases where actual support was being furnished or contributions made, as such a rule would in many instances exclude children from the benefits of a law that

was clearly intended for their protection." See, in this connection, *Malzac* v. *Brule Timber Co.* (1916), Mich. Wk. Comp. Cases p. 330.

By the statute, the state has created a sharper and more effective spear for a dull or dormant sense of parental duty than that which was, before the statute was enacted, the instrument of a court of equity in a divorce proceeding. It was the duty of the decedent to support his infant children and the fact that he had been deprived of their custody cannot serve to relieve him of that duty. *Spade* v. *State, supra,* and authorities there cited; *State* v. *Yocum, supra.*

While the parent's duty to support his child and his right to custody and services of the child are usually reciprocal, the parent remains liable for the support of the child where he is deprived of its custody on account of his own misconduct or wrong doing, and the fact that, as between the parents, the custody of the children has been awarded to the mother does not relieve the father of the duty to support. *Shields* v. *O'Reilly* (1896), 68 Conn. 256, 36 Atl. 49; *Cowls* v. *Cowls* (1846), 8 Ill. 435, 44 Am. Dec. 708; *Spade* v. *State, supra; Leibold* v. *Leibold, supra.*

It must be kept in mind that the welfare of the child is the paramount consideration, and that, awarding its custody to either parent cannot be taken as a reward to the one or a punishment to the other. It must be presumed that the court in awarding the custody does so for the welfare of the child.

Not only a legal but a moral obligation rests upon the father to support his minor child, and while, as between himself and third parties, that obligation may be shifted in proceedings of guardianship or divorce, he may, by misconduct, forfeit his right to the custody thereof. But the child, who is not a party, cannot be deprived of his natural rights to turn to his father for mainte-

nance, if the substitute source of supply fails. See *Svoboda* v. *Superior Court* (1923), 190 Cal. 727, 214 Pac. 440.

In the case of the *Vigo Am. Clay Co.* v. *Kelly, Gdn.,* *supra,* this court, by Enloe, J., says: "By express provision of our statute (§2636 Burns 1914, Acts 1907 p. 160) a *legal* obligation was imposed upon the father, Otis Johnson, to support this child. That obligation was imposed upon him at the birth of said child, and thereafter, during his life, it continues, unless removed or shifted in some way recognized by law. True, we may say, that Hunter and his wife, under the circumstances of this case, while they retained the custody of said child, were *morally* bound to supply her reasonable wants, as to her support, but this burden was not one imposed upon them by *the law,* and it was a burden they could put aside at any time by returning the custody of said child to its father. The *legal* duty to support this child, upon this record, at all times rested upon the father, but this legal duty was, for the time being, as between said father and Hunter, being performed by Hunter, for the father, not because of any *legal* duty resting upon Hunter, but because he recognized his moral obligation in that behalf. The record discloses no fact or facts which would have the effect of relieving Johnson of his legal duty to support said child; this duty remained upon him."

So, in the present case, the fact that the support was being furnished by another than the father did not relieve him of that legal duty.

A parent of sufficient ability is legally bound to support his child and has no right to cast any part of the burden of support upon the public. *Rowell* v. *Town of Vershire* (1890), 62 Vt. 405, 19 Atl. 990, 8 L. R. A. 708. It is the father's duty to the child and to the public. *Porter* v. *Powell* (1890), 79 Iowa 151, 44 N. W. 295, 7 L. R. A. 176, 18 Am. St. 353.

The incarceration of a minor child in a state hospital for the insane without his father's consent is not an emancipation of the child, and does not relieve that father from liability for its care, he being otherwise liable. *Guthrie County* v. *Conrad* (1907); 133 Iowa 171, 110 N. W. 454. It has been held that the funeral expenses of a child is a father's debt. *Rowe* v. *Raper* (1899), 23 Ind. App. 27, 54 N. E. 770, 77 Am. St. 411. Duty to support. *Leibold* v. *Leibold, supra; Haase* v. *Roehrscheid* (1854), 6 Ind. 66; *Ramsey* v. *Ramsey* (1889), 121 Ind. 215, 23 N. E. 69, 6 L. R. A. 682; *Husband* v. *Husband* (1879), 67 Ind. 583, 33 Am. Rep. 107; *Wright* v. *Leupp* (1905), 70 N. J. Eq. 130, 62 Atl. 464.

The growth of the law in reference to parent and child, has been most remarkable. It has been an evolution, a change that has kept pace with our civilization which has a far different conception of parenthood than did our ancestors.

Duty to support does not rest wholly on right of custody. Both by judicial decision and statute, it is made the father's duty to support.

Suppose the child is a cripple, feeble-minded or incapable from any cause to support itself. Would we say that because the father received no income he is relieved of a duty to support? The law is not that harsh. It shocks our sense of justice to think that such is the law. The father had recognized his duty. He had sent a small amount of money, some clothing, no doubt what he was able to send, to the White's Manual Training Institute for the boy. The court recognizes the parental tie, for, as soon as the father died, the child was released to attend the funeral and has never been returned. It was simply sending a child away to a training school for the good of the child and of society, but in no sense to relieve the father from any legal duty owing by the father to his son.

As stated above, it is expressly provided by §1705

Burns 1926: "In every case in which the court shall commit any child to the care and custody of any institution, as above provided, other than a state institution, and such child shall have a parent or guardian within the county, the court may make and enter an order requiring such parent or guardian to appear before said court upon a day and hour to be named therein and show cause, if any he or she have, why he or she should not pay for the support of such child, in whole or in part, while it is an inmate of such institution." The court shall then "hear evidence as to the financial ability of such parent or guardian, and in case the court shall find that such parent or guardian shall pay for or contribute to the maintenance of such child, the court shall render judgment against such parent or guardian that such parent or guardian shall pay to the clerk of the juvenile court such sum as the court shall adjudge and at such times and in such amounts as shall be by the court found just."

It is to be observed that this statute requires the parent to show cause why he should *not* support his child, thus clearly implying, in the absence of such showing, a duty to support, and, under this statute, nothing relieves the parent from paying for or contributing to the maintenance of the child except his financial inability to do so. The statute only authorizes the court to hear evidence on this point, and the fact that the parent under this statute is deprived of the custody of the child has nothing whatsoever to do with his duty to support, the only question being his ability to do so. So far as the record shows in this case, it was not determined that the father had no duty to perform, and, in the absence of such showing, the presumption is that he did have such a duty.

The compensation law does not say that compensation depends upon the custody of the child; but the question is: Do the laws of the state impose upon the father the obligation to support such child at the time of his death?

The question is not: Was the father supporting the child? The question is not: Was the child in his custody, but it was whether the father was under a legal obligation at the time to support the child.

In *Guthrie County* v. *Conrad, supra,* the father of a child who was taken and placed in a hospital for the insane, claimed he was not responsible for the support of his child, because the child was forcibly taken from his care and custody and was therefore emancipated. The court says: "When liability already exists, it is unnecessary to legislate on the subject, and to do so would be an idle act. . . . It is the settled rule in this state that a parent is bound for the care and maintenance of his minor child. . . .

"Admitting that the son was placed in the asylum without the consent of the appellant (father), it must still be presumed that the act was for the best interest of the public and of the son, and such interests furnish full justification for the act. . . . A parent may lawfully be deprived of the custody of his minor child, and still be liable for its support."

The cases mainly relied upon in the majority opinion of this court are divorce and separation cases, and, in such cases, the rights involved are generally between husband and wife, and are not controlling under the circumstances of this case.

This is a case in which only the rights of a child and the duty of the parent to support him are involved. My strongest convictions are in favor of the award from every legal standpoint, for it is the intention of the law to so award compensation in cases of this kind.

Nichols, J., dissents, and concurs in the conclusions of the dissenting opinion.

## PETITION FOR REHEARING.

McMAHAN, C. J.—The petition filed on behalf of Amos Freestone is denied. Since the evidence on the next hearing may show a different state of facts relating to the validity of the commitment of Amos and the liability of his father for his support, we are of the opinion that none of the parties should be handicapped or bound by an award in favor of Ernest. The petition for a rehearing as to him is sustained, and the award as to him is now reversed, with directions to the board to vacate and set aside, and vacate in its entirety, the award made by the full board and the award made by the single member, and for further proper proceedings.